JESSE C. ROWAN and JAMES M. ROWAN v. DIEDRICH H. BUTTMAN.

If goods sold to an agent have come to the use of his principal, the seller, upon discovering the principal, may require payment of him, although he instructed the agent not to purchase on credit, unless the principal can show that it would change the state of accounts between himself and his agent to his prejudice. It would be otherwise, however, if the seller gives the credit exclusively to the agent, as when he hears of the existence of the principal, and yet debits the goods to the agent.

Where a person carrying on a bakery, with all the external appearance of ownership, and representing himself to be the owner, purchases a quantity of flour which was used in the business, and it appeared that he was formerly the owner of the bakery, that he became embarrassed, and that he had entered into a written agreement with the defendant, who was in another business, declaring that the defendant was the owner of the stock in trade, and the fixtures—that he was to manage and carry on the business for the defendant at twelve dollars per week, and if the net profits exceeded that sum, then he was to have a certain proportion of them—the whole transaction having the appearance of one of the ordinary contrivances by which a debtor, with the aid of a secret principal, attempts to evade the payment of his debts—*Held*, that the defendant was liable to the plaintiff, though he testified that there was a verbal agreement that the agent was to buy only for cash, and that when he wanted money for flour, that he was to come to him for it.

APPEAL by the defendant from a judgment of the Marine Court at General Term.

The action was brought to recover the value of sixty barrels of flour, alleged to have been purchased of the plaintiff by the defendant by and through his clerk and agent, T. Oest, in May and July, 1862.

The answer set up that any flour purchased of the plaintiffs by Oest, was purchased by him, and was sold to him by the plaintiffs on his own credit, and without any power or authority from the defendant to purchase the same.

It appeared on the trial that the defendant, who had been proprietor of the Washington Bakery, in September, 1861, entered into a written agreement with Oest, whereby it was declared that the defendant was the owner of the stock in trade

and fixtures, and agreed that in consideration of one dollar in hand paid, and of twelve dollars per week, Oest would " devote his whole time and attention in and about the management and carrying on of said business [the Washington Bakery,] at the aforesaid place, and to the utmost of his skill and power, exert himself for the benefit and interest of the party of the first part [the defendant] in carrying on the same," &c. It was further agreed that should the net profits of the business exceed twelve dollars per week, Oest should receive in addition, one-fourth of such excess; the balance to be accounted for, and paid to the defendant.

Oest purchased the flour of the plaintiffs upon representations that the business of the bakery was his, and that he was responsible.   The flour thus purchased was charged to Oest upon the plaintiffs' books, and was used in the Washington Bakery.

Subsequently Oest went to California, and the defendant by a bill of sale transferred the stock in trade and fixtures of the bakery to one Buckman, the step-son of Oest.

On the first trial the complaint was dismissed.   On appeal taken to the General Term of the Court below, a new trial was ordered, and on such new trial, the cause being submitted on the same testimony, judgment was rendered for the plaintiff. The General Term having affirmed this, the defendants appealed to the Common Pleas.

*D. T. Walden*, for appellant.

*G. R. Walton*, for respondents.

By the Court.—Daly, F. J.—It appeared that Oest carried on the same business, at the same place, under the same title, that of the Washington Bakery, for at least fourteen months anterior to the agreement in writing entered into between him and the defendant. In this agreement the defendant is declared to be the owner of the fixtures and of the stock in trade, and by it Oest agrees to carry on the business for the defendant's benefit, who was a grocer, at the compensation of twelve dollars a week, and one-fourth of the profits that might be realized beyond that.   How or when the defendant became the owner of the fixtures and of the stock in trade, did not ap-

pear; but when Oest left for California, a few weeks after the last load of flour was delivered, the defendant gave a bill of sale of the fixtures, stock in trade, tools, &c., to a step-son of Oest—so that the whole transaction looked very like one of those ordinary contrivances by which a debtor, with the aid of a secret principal, seeks to get rid of the responsibility of paying his debts. Be that as it may, the arrangement between defendant and Oest was such as to enable the latter to continue and carry on the business with the outward indication of apparent ownership, of which he made ample use by representing to the plaintiffs that he was the owner of the business, upon which representation they sold him about four hundred dollars' worth of flour upon credit, all of which was delivered at the bakery, and baked up. The plaintiffs had previously sold Oest flour for cash—and when he sought to buy upon credit, they made inquiries about him; and as he was recommended to them by other parties, and represented himself to be the owner of the business, they gave him flour upon credit at three different periods between the 20th of May and the 1st of July, 1862. In a fortnight after the last load was delivered, Oest left for California, and in a week afterwards the defendant made the bill of sale to Oest's step-son.

The defendant testified that after the written agreement was entered into between him and Oest, he made a verbal agreement with the latter that he was to buy for cash only; that if he wanted money he was to come to him, and that he gave him three hundred dollars to buy flour from the plaintiffs, or as he stated it, "to pay for flour in Broad street." But the testimony upon this point left it uncertain whether the three hundred dollars, if it ever had been given, was for the flour bought upon credit, or for that which Oest had previously purchased of the plaintiffs for cash, as the defendant stated that he did not know when he gave it. His evidence appears to have been regarded by the justice as unsatisfactory, and it was of such a loose and uncertain nature as to entitle the justice, in my opinion, to disregard or disbelieve it.

It was said by my former colleague, Judge Woodruff, in *Fish* v. *Wood*, 4 E. D. Smith R., 329, where goods purchased by an agent in his own name, even without express authority, (if not purchased upon his exclusive credit,) have come to the use of

Rowan v. Buttman.

the principal, which is the case here, the vendor, on discovering the principal, may require payment of him. What Judge Woodruff meant by a purchase upon the exclusive credit of the agent, may be illustrated by the cases of *Paterson* v. *Gandasequi*, 15 East, 62, and *Addison* v. *Gandasequi*, 4 Taun., 574, in which the seller, knowing who the principal was, debited the goods to the agent, thereby indicating that he sold them, not upon the responsibility of the principal, but exclusively upon the credit of the agent. In such a case the seller, with a full knowledge of the facts, concludes to look to the agent and not to the principal—and having thus made his election, the contract is exclusively with the agent.

The rule which applies in a case like the one now before us, was comprehensively stated by Lord TENDERDEN in *Thompson* v. *Davenport*, 9 B. & C., 78. "I take it," he says, "to be a general rule, that if a person sells goods, supposing at the time of the contract that he is dealing with a principal, but afterwards discovers that the person with whom he is dealing is not the principal in the transaction, but agent for a third person, though he may in the mean time have debited the agent with it, he may afterwards recover the amount from the principal, subject however to this qualification—that the state of the accounts between the principal and agent is not altered to the prejudice of the principal."

But to bring the principal within this qualification it must clearly appear that he would be damnified, as where he has settled with the agent upon the warrantable assumption that he was answerable to him (*Wyatt* v. *The Marquis of Hertford*, 3 East R., 147 ; *Cheever* v. *Smith*, 15 John. R., 276 ; *Rathbone* v. *Tucker*, 15 Wend., 498); and in *Nelson* v. *Powell* (3 Doug. 410), the principal was held responsible for a balance due upon a sale of goods made to the agent in his own name, even though he had remitted to the agent the money to pay for them.

In the present case the flour went to the defendant's use, and he could not be damnified unless he had given out the money to pay for it—a point upon which the testimony was not sufficiently clear to warrant our disturbing the finding of the justice.

The judgment should be affirmed.